**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

TAMMY R. VAUGHN[1], :

                Plaintiff,

   -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,
                Defendant. :

Case No. 3:08-cv-249

District Judge Thomas M. Rose
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1381(c)(3) as it incorporates §405(g), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v.*

---

[1] Since it changed from Slusher, Plaintiff's last name had been spelled "Vaughan" in the administrative record as well as on the caption of her Application to Proceed Without Prepayment of Fees. (Doc. 1). However, it is spelled "Vaughn" on the caption of her Complaint, (Doc. 2), and that is how it is spelled on the Court's docket.

*Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

To qualify for supplemental security benefits (SSI), a claimant must file an

application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a. With respect to the present case, eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520 . First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 (1990). If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the

Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed applications for SSD and SSI, which were denied on April 18, 2003, by an administrative law judge (ALJ), and Plaintiff did not seek further review. (Tr. 71, 83). Plaintiff again filed applications for SSD and SSI on January 22, 2004, alleging disability from April 19, 2003, due to seizure disorder, chronic back pain, migraines, bipolar disorder, and sleeping disorder. (Tr. 67-69, 74). Plaintiff's applications were denied initially and on reconsideration. (Tr. 45-46, 48-58). A hearing was held before Administrative Law Judge Melvin A. Padilla, (Tr. 382-412), who determined that Plaintiff is not disabled. (Tr. 12-31). The Appeals Council denied Plaintiff's request for review, (Tr. 5-7), and Judge Padilla's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Padilla found that Plaintiff met the insured status requirements of the Act through June, 2005. (Tr. 16, ¶ 1). Judge Padilla also found that Plaintiff has a severe history of seizure disorder, lumbar strain/sprain with left hip pain possibly secondary to history of pelvic fractures, possible personality disorder, possible pain disorder, and affective disorder with features of anxiety and depression, *Id.* ¶ 3, but that she does not have an impairment or combination of impairments that meets or equals the Listings. (Tr. 23, ¶ 4). Judge Padilla also found that Plaintiff has the residual functional capacity to perform a reduced range of light work. *Id.* ¶ 5. Judge Padilla then used sections 202.20 through 202.22 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. (Tr. 30, ¶¶ 9, 10). Judge Padilla concluded that Plaintiff is not disabled and therefore not entitled to benefits

4

under the Act. (Tr. 31).

In her Statement of Errors, Plaintiff does not challenge the Commissioner's findings with respect to her alleged mental impairments. (Doc. 8). Accordingly, the Court will focus its review of the medical evidence on Plaintiff's alleged exertional impairments.

Plaintiff has a history of undergoing surgery for a brain aneurysm when she was nine years old. (Tr. 251). In addition, Plaintiff was involved in a vehicular collision in 1999 and suffered a fractured pelvis. (Tr. 121-22).

On April 1, 2003, Plaintiff's treating psychiatrist Dr. Bohjwani at Eastway Behavioral Healthcare noted that Plaintiff had undergone brain surgery several years ago to remove an aneurysm and that she subsequently developed a seizure disorder. (Tr. 125).

A July 4, 2003 CT scan of Plaintiff's brain revealed post-surgical changes in the right frontal and right parietal area associated with encephalomalacia. (Tr. 209).

The record contains Plaintiff's treatment notes from the Miami Valley Hospital clinic dated October, 2002 through September, 2004. (Tr. 193-234). On January 21, 2004, Dr. Laureno of that facility reported that Plaintiff's diagnoses were seizure disorder, bipolar disorder, migraines, and history of chronic back pain, that her condition was good/stable with treatment, and that she was able to stand/walk and sit each for one-half to one hour in an eight hour workday and for one-half to one hour without interruption, and lift up to five pounds occasionally. *Id.* Dr. Laureno also reported that Plaintiff was unemployable and would be indefinitely. *Id.* Dr. Laureno reported on March 10, 2004, that she first saw Plaintiff on September 10, 2003, that she has a history of migraine headaches, cerebral aneurysm with surgical clipping, history of encephalomalacia, seizure disorder, bipolar disorder, and chronic back pain. *Id.* Dr. Laureno also reported that Plaintiff had multiple

5

tender points in the trapezius area, paraspinal muscles, costochondral area of the right pelvis and the right knee. *Id.* On July 29, 2004, Dr. Laureno reported that Plaintiff had multiple medical problems including a history of a cerebral aneurysm, status post surgical clipping, seizure disorder, encephalomalacia, bipolar disorder, chronic left hip pain, left shoulder pain, and fibromyalgia. *Id.* Dr. Laureno also reported that Plaintiff was being seen by a psychiatrist for her bipolar disorder and has seen a pain specialist for her chronic pain, and that her "medical problems could be disabling". *Id.*

The clinical notes from the Miami Valley Hospital clinic also reflect that Plaintiff was treated by neurologist Dr. Brown for her seizure disorder. *Id.* Over time, Dr. Brown noted that Plaintiff continued to complain of having seizures and Dr. Brown adjusted her medication as needed. *Id.*

Plaintiff began receiving treatment from Dr. Kahn in October, 2004, and continued to receive treatment from that physician until at least October, 2005. (Tr. 246-52; 269-71). A review of Dr. Kahn's treatment notes reveals that he treated Plaintiff for low back pain, seizure disorder, osteoarthritis of the hip, anxiety, depression, and migraine headaches. *Id.*

On November 8, 2004, Plaintiff sought treatment for her seizure disorder from neurologist Dr. White of the Wallace-Kettering Neuroscience Institute Epilepsy Center. (Tr. 253-68). When he first evaluated Plaintiff, Dr. White reported that she was alert and oriented and that her neurological examination was normal. *Id.* On December 1, 2004, Dr. White reported that a recent CT scan of Plaintiff's head showed evidence of a large area of encephalomalacia in her right frontal lobe consistent with her previous aneurysm and clipping and stroke that occurred as a result. *Id.* Dr. White also reported that Plaintiff's recent EEG revealed evidence of focal slow activity

mixed with sharp waves in the same region which would indicate that the seizures Plaintiff experienced most likely arose from that region. *Id.* Dr. White noted that he was not completely certain that all of the spells that Plaintiff was experiencing were definitely seizures, but he also noted that he had no evidence to definitely suggest otherwise. *Id.* Dr. White also noted that Plaintiff's examination was unchanged. *Id.* Dr.White continued to adjust Plaintiff's medications and on January 12, 2005, Dr. White reported that while it was clear that Plaintiff did have epilepsy, many of the events were of questionable significance. *Id.* On July 25, 2005, based on Plaintiff's inquiry with respect to a part-time job boxing items to be mailed, Dr. White advised Plaintiff that it was "Okay to work". *Id.*

During the period March 7, through March 10, 2005, Plaintiff underwent a three-day EEG study in the Epilepsy Monitoring Unit. (Tr. 244-45). In interpreting the results of the study, Dr. White reported that it was an abnormal study which demonstrated the presence of much focal slow activity mixed with sharp and slow as well as spike and slow wave discharges in the right frontal and right central or centro-temporal regions which indicated the presence of a focal, potentially epileptogenic, lesion in those regions. *Id.* Dr. White also noted that Plaintiff reported four of her typical clinical events with no clear change in the background character of the EEG indicating that the events in question were most likely non-epileptic in origin. *Id.*

A November 10, 2005, EMG of Plaintiff's lower extremities revealed mild peripheral polyneuropathy, but no evidence of a lumbosacral radiculopathy. (Tr. 272-73). A CT scan of the hip indicated prior hip surgery, but no degenerative findings, and a CT scan of Plaintiff's lumbar spine was normal. (Tr. 274-75).

During the period December, 2005, through at least August 14, 2006, Plaintiff

received treatment in the office of Drs. Mukhdomi and Gupta for her complaints of pain. (Tr. 283-97)[2]. When Dr. Mukhdomi evaluated Plaintiff on December 1, 2005, he noted that Plaintiff complained of pain in her lower back, that her pain level was 8/10, and that she had no neurological symptoms. *Id.* Plaintiff continued to receive treatment with medications and injections in Drs. Mukhdomi's and Gupta's offices. *Id.* An office note dated February 28, 2006, indicates that Plaintiff was tender to palpation of the left trochanteric bursa, had facet tenderness on rotation and side bending, and was tender over the left IS joint. *Id.*

The record contains additional evidence from Drs. White, Gupta, and Dueno as well as from Kettering Memorial Hospital and Sycamore Hospital, (Tr. 301-77), which was not before Judge Padilla, but which Plaintiff submitted to the Appeals Council. However, since the Appeals Council denied Plaintiff's request for review, that evidence is not a part of the record for purposes of substantial evidence review of Judge Padilla's decision. *Cline v. Commissioner of Social Security,* 96 F.3d 146, 148 (6th Cir. 1996) (citation omitted).

Plaintiff alleges in her Statement of Specific Errors that the Commissioner erred by failing to give controlling weight to Dr. Laureno's opinion and by failing to restrict her to sedentary exertional work pursuant to *Drummond v. Commissioner of Social Security,* 126 F.3d 837, 842 (6th Cir. 1997). (Doc. 8).

In general, the opinions of treating physicians are entitled to controlling weight.

---

[2] It is not entirely clear as to who actually saw and treated Plaintiff on each visit. For example, while an office note dated February 28, 2006, identifies "SURESH GUPTA, MD" as the "Provider", it appears that the treatment note is in fact an electronic note which seems to have been initialed by "jeN PA-C", possibly indicating a physician assistant rendered care. (Tr. 292-93). Additionally, that note indicates "Entered data sealed by: SURESH GUPTA date: 05/21/2006 13:49" which seems to suggest that Dr. Gupta reviewed and co-signed the entry at a date subsequent to the treatment date. *Id.* Similar documentation appears on March 28, 2006, (Tr. 290-91), April 18, 2006, (Tr. 288-89), and August 14, 2006, (Tr. 283-84). Finally, treatment notes dated June 19, 2006, and July 17, 2006, identify "John E Beresh" as the "Provider". (Tr. 285, 286).

8

*Cruse v. Commissioner of Social Security*, 502 F.3d 532, 540 (6th Cir. 2007), *citing, Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997) (citing 20 C.F.R. § 404.1527(d)(2) (1997)). In other words, greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 242, (6th Cir. 2007), citing *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004). "A physician qualifies as a treating source if the claimant sees her 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'" *Cruse,* 502 F.3d at 540 (alteration in original) (quoting 20 C.F.R. § 404.1502). However, a treating physician's statement that a claimant is disabled is of course not determinative of the ultimate issue. *Landsaw v. Secretary of Health and Human Services,* 803 F.2d 211, 213 (6th Cir. 1986). A treating physician's opinion is to be given controlling weight if it is well supported by medically acceptable clinical and laboratory techniques and it is not inconsistent with the other substantial evidence in the record. *Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284 (6th Cir. 1994).

While it is true that a treating physician's opinion is to be given greater weight than that of either a one-time examining physician or a non-examining medical advisor, that is only appropriate if the treating physician supplies sufficient medical data to substantiate that opinion. *See, Kirk v. Secretary of Health and Human Services,* 667 F.2d 524 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983); *see also, Bogle v. Sullivan,* 998 F.2d 342 (6th Cir. 1993). A treating physician's broad conclusory formulations regarding the ultimate issue of disability, which must be decided by the Commissioner, are not determinative of the question of whether an individual is under a disability. *Id.* Further, the Commissioner may properly reject a treating physician's opinion if it is

not supported by sufficient medical data or if it is inconsistent with the other evidence of record. *Cf., Kirk, supra; see also, Walters, supra.*

Judge Padilla rejected Dr. Laureno's opinion that Plaintiff is unemployable primarily on the basis that it was not supported with objective clinical findings. (Doc. 26). This Court concludes that Judge Padilla had an adequate basis for rejecting Dr. Laureno's opinion.

First, when Dr. Laureno offered her opinion on January 21, 2005, that Plaintiff was unemployable, she failed to document any objective clinical findings to support her opinion. Similarly, when she offered her March 10, 2004, opinion, Dr. Laureno reported that Plaintiff had, at worst, tender points in the trapezius area, paraspinal muscles, costochondral area of the right pelvis, and of the right knee. Finally, on July, 2004, Dr. Laureno simply reported that Plaintiff's medical problems *could* be disabling. In addition, a review of Dr. Laureno's office notes reveals that she documented few, if any, positive physical findings. Further, Dr. Laureno's opinion is not supported by the objective tests of record. For example, an EMG revealed mild peripheral polyneuropathy but no evidence of radiculopathy, a CT scan of Plaintiff's hip revealed no degenerative findings, and a CT of Plaintiff's lumbar spine was normal.

Dr. Laureno's opinion is also inconsistent with the other evidence in the record including the findings of Drs. Brown, Kahn, and White, none of whom determined that Plaintiff is disabled. Finally, Dr. Laureno's opinion is inconsistent with the reviewing physicians' opinions. (Tr. 143-47).

Under these facts, the Commissioner did not err by rejecting Dr. Laureno's opinion that Plaintiff is disabled.

Plaintiff argues next that the Commissioner erred by failing to properly apply

*Drummond, supra,* and Acquiescence Ruling (AR) 98-4, 1998 WL 283902 (June 1, 1998), which essentially provide that absent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the residual functional capacity finding of a previous ALJ. Essentially, Plaintiff's position is that Judge Padilla was bound by the previous ALJ's finding that she was capable of performing only a limited range of sedentary work. Plaintiff argues that this is so because there is not substantial evidence of an improvement in her condition. Plaintiff concludes that none of the factors cited by Judge Padilla could lead a reasonable mind to conclude that her impairments had significantly improved since the prior ALJ decision on April18, 2003. However, Plaintiff fails to present an argument as to how the alleged error affected the outcome of this matter.

The prior ALJ found that Plaintiff had the ability to lift up to ten pounds, sit up to six hours, and stand/walk up to two hours; in other words that she could perform sedentary work with a sit/stand option and which did not require her to repetitively operate controls with her left foot, more than occasionally bend, stoop, or twist at the waist, crouch, kneel, crawl, or climb ladders, ropes, and scaffolds. (Tr. 24). In contrast, Judge Padilla determined that Plaintiff was able to lift up to 20 pounds, sit up to two hours, stand/walk up to six hours; in other words, that she could perform light work with a sit/stand opinion and which did not require her to climb ladders, scaffolds, work at heights, crouch, crawl, kneel, or repetitively use foot controls with her left foot. (Tr. 23). The differences between the prior ALJ's finding and Judge Padilla's finding are the amount of sitting, standing, walking, and lifting that Plaintiff is capable of performing. However, even though Judge Padilla determined that Plaintiff is capable of performing a limited range of light work, when he propounded a hypothetical question to the VE, he included the ability to perform sedentary work with the ability to alternate positions and no repetitive left foot controls, climbing ladders, kneeling,

11

crouching, or crawling. (Tr. 410). In response, the VE testified that there are 2,500 sedentary jobs which an individual with those limitations could perform. (Tr. 410-11). Because this hypothetical question which Judge Padilla posed to the VE included all of the limitations identified by the previous ALJ as well as Judge Padilla, the result in both cases is the same; that is, there is a significant number of jobs in the economy which Plaintiff is capable of performing. Therefore, even assuming arguendo that there is a lack of substantial evidence in the record that Plaintiff's impairments had improved since the prior administrative decision and that Judge Padilla was bound by the previous ALJ's findings as to Plaintiff's residual functional capacity, there was no reversible error because the results are the same.

Our duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

April 2, 2009.

*s/ Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).